298

**SCHOLNICK v. CLARK, Attorney General, et al.**

Civil Action No. 3737—48.

United States District Court
District of Columbia.

Dec. 1, 1948.

Joseph Forer and David Rein, both of Washington, D. C., and Carol King and Ira Gollobin, both of New York City, for plaintiff.

H. G. Morrison, Asst. Atty. Gen.; George Morris Fay, U. S. Atty., and Sidney S. Sachs, Asst. U. S. Atty., both of Washington, D. C., and Edward H. Hickey and Melvin H. Siegel, Sp. Asst. to Atty. Gen., for defendant.

MORRIS, District Judge.

This is a proceeding in which the plaintiff, who is an alien, seeks injunctive relief to restrain the defendants from conducting certain deportation proceedings against her, unless more adequate notice of said hearing be given by the defendants to the plaintiff, unless the hearing when held be presided over and conducted by an examiner having the status and qualifications provided by the Administrative Procedure Act, and not by an agent or immigrant inspector who is fully under the control and direction of the defendants, as it is alleged defendants intend to do, and unless said hearing is in all other respects in accordance with the provisions of said Administrative Act, and further that deportation of the plaintiff be enjoined unless pursuant to a hearing held in accordance with the provisions of said Administrative Procedure Act.[1] The plaintiff further seeks a declaratory judgment that the plaintiff has the right to have the provisions of the said Administrative Procedure Act complied with in the hearing in proceedings to deport her, and to have reasonable and fair advance notice of such hearing. A motion of the plaintiff for a temporary restraining order was denied by this Court, and the matter now before the Court is a motion for preliminary injunction pending the final determination of the cause. Affidavits and memoranda have been filed in support of and in opposition to the granting of such preliminary injunction. A hearing was had on October 12, 1948, and subsequently reply brief in support of motion for preliminary injunction was filed by the plaintiff.

Almost all of the argument, both in support of and in opposition to the motion for preliminary injunction, has to do with the question of whether or not a hearing must be accorded to the plaintiff in the deportation proceedings in accordance with the provisions of the Administrative Pro-

[1] 5 U.S.C.A. § 1001 et seq.

cedure Act. That Act requires a hearing in accordance with its terms "in every case of adjudication required by statute to be determined on the record after opportunity for an agency hearing [with exceptions not here relevant]." The statute with reference to deportation of aliens here involved provides that—

"Any alien who was at the time of entering the United States, or has been at any time thereafter, a member of any one of the classes of aliens enumerated in this section, shall, upon the warrant of the Attorney General, be taken into custody and deported * * *." 8 U.S.C.A. § 137(g).[2]

It has been held by the Supreme Court in the case of Kessler v. Strecker, 307 U. S. 22, 59 S.Ct. 694, 700, 83 L.Ed. 1082, that—

"If the hearing was fair, if there was evidence to support the finding of the Secretary [under Reorganization Plan No. 5, 5 U.S.C.A. following section 133t, effective June 14, 1940, the Attorney General], and if no error of law was committed, the ruling of the Department must stand and cannot be corrected in judicial proceedings. If, on the other hand, one of the elements mentioned is lacking, the proceeding is void and must be set aside."

It is the contention of the plaintiff that, inasmuch as the statute has been held to be valid only upon the construction that a fair hearing is necessary, a hearing is required by the statute within the meaning of the Administrative Procedure Act, and hence such hearing must be in accordance with the terms of that Act. It is the position of the defendants that the fair hearing required by the decisions of the Supreme Court is a constitutional requirement, and not a statutory one, and hence the hearing must meet constitutional requirements of due process, but not the legislative requirements of procedure provided in the Administrative Procedure Act.

In my view, a fundamental barrier stands in the way of answering this question at this time, and granting the relief sought by the plaintiff in the instant proceedings. It is well established that ordinarily relief by judicial action may not be had until an administrative remedy has been exhausted. Myers v. Bethlehem Shipbuilding Corp., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638; Macauley v. Waterman Steamship Corp., 327 U.S. 540, 66 S.Ct. 712, 90 L.Ed. 839; Federal Power Commission v. Arkansas Power & Light Co., 330 U.S. 802, 67 S.Ct. 963, 91 L.Ed. 1261; and Transamerica Corp. v. McCabe et al., Civil Action No. 4175—48, decided by this Court November 3, 1948. This rule is by no means an arbitrary one. If the administrative process is to function effectively and efficiently, and it is of vital importance in a complex government such as ours that it do both, judicial control should be exercised upon the completed action, and in the light of the results of that action. That the action of administrative agencies should be subjected to adequate, but not extravagant, judicial review is now settled beyond serious controversy; but it is equally well settled that the judicial power can more effectively safeguard the rights of individuals against improper administrative action after that action is taken, instead of in anticipation of what it will be. This, of course, does not mean that recourse may not be had to the District Court for equitable relief to prevent irreparable injury. No injury to the plaintiff is shown which cannot be adequately corrected by the judicial power after the administrative remedy has been exhausted. The judicial power may be invoked after the administrative remedy here involved has been exhausted.

---

[2] The deportation of aliens has by law been committed to the Attorney General. He has, however, delegated that authority to the Commissioner of Immigration and Naturalization with a right of review of the Commissioner's order to the Board of Immigration Appeals in those cases in which the Commissioner determines that the alien should be deported. 8 C.F.R. 90.1 (Supp.1943); 8 C.F.R. 90.3 (Supp. 1945); if the Board's conclusions conflict with those of the Commissioner the case may be certified to the Attorney General upon the Commissioner's request or the Attorney General may request that the record in any case be certified to him. Note 3, United States ex rel. Trinler v. Carusi, 3 Cir., 166 F.2d 457, at page 458.

It has long been the practice, and there is no contention to the contrary, that courts may determine in habeas corpus proceedings whether a person sought to be deported is afforded a full and adequate hearing in the deportation proceedings, whether the findings therein are supported by substantial evidence, and whether the law is correctly applied in such proceedings. Bata Shoe Co. v. Perkins, 33 F.Supp. 508, decided by this Court; United States ex rel. Trinler v. Carusi, 3 Cir., 166 F.2d 457. The Supreme Court reviewed the action in deportation proceedings and applied the tests of fair hearing, substantial evidence and correct application of the law where these matters were called into queston by writs of habeas corpus in both the cases of Kessler v. Strecker, supra, and Bridges v. Wixon, 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103.

Without respect to whether or not the Administrative Procedure Act controlled the conduct of a hearing in the deportation proceedings, it has been held in the Third Circuit that such Act does provide for judicial review of an order of deportation in addition to the recognized judicially established review by habeas corpus. · United States ex rel. Trinler v. Carusi, supra. Although the statute committing the deportation of aliens to the Attorney General provides that his decision shall be final, the Court states 166 F.2d at page 460:

"Nevertheless, and in spite of such language, it is perfectly clear that it is not final in the sense that courts cannot do anything about it. The petitioner points out, and the Government agrees, that the legality of deportation orders may be tested in habeas corpus proceedings. * * *

"We have, therefore, a situation where in spite of statutory language of finality for an ·administrative order there is judicial review of long standing, albeit of a limited nature. The new question presented in this litigation is whether that review has been enlarged by Section 10 of the Administrative Procedure Act. Paragraph (a) of Section 10 gives judicial review to 'Any person * * * adversely affected * * * by such action [5 U.S.C.A. § 1009(a)].' We

do not need to labor the point that petitioner is adversely affected by the deportation order. His difficulty comes, however, in the 'excepting' clause with which Section 10 opens. That clause says 'Except so far as (1) statutes preclude judicial review or (2) agency action is by law committed to agency discretion' the right of judicial review is given.

* * * * * *

"Our conclusion is that the case does not fall within the exception. Therefore the judicial review provisions found in Section 10 of the Act are applicable. We are impressed by the fact that in spite of the basic statute's wording habeas corpus proceedings have always been available. Since they have been available the situation cannot be one where judicial review in the past has been precluded.

* * * * * *

"The fact that review has been judge-made out of the concept of due process does not make it any less a qualification of the statute than if the legislators had put the provision in it when the statute was first drawn."

Thereupon, that Court held the proceedings, which was denominated "Petition for Review," was appropriate for a statutory review of the deportation order after it had been made.

In the light of the decision last quoted, and there is no decision of which I am aware to the contrary, it seems that there is not only judicial review of deportation proceedings by habeas corpus, but a statutory judicial review of the deportation order as well. In this situation, the reasons are all the more compelling why the District Court, in the exercise of its equitable powers, should not interfere with the administrative proceedings here sought to be enjoined. If, as the plaintiff contends, the provisions of the Administrative Procedure Act are applicable to the *hearing* in deportation proceedings, and these requirements are not complied with, to the prejudice of the rights of the plaintiff, ample and adequate relief can be afforded when the judicial power does come into play at the instance of the plaintiff after a final

order in the deportation proceedings by which he is aggrieved has been made.

The motion for preliminary injunction will be denied.